Ballstaedt Law Firm, LLC dba Fair Fee Legal Service
Seth D. Ballstaedt, Esq. Bar # 11516
8751 W Charleston Blvd #230
Las Vegas, NV 89117
(702) 715-0000
help@bkvegas.com

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CHRISTONE DISTRIBUTION, INC.<br><br>Debtor(s) | Case No. 23-10055-mkn<br>Trustee: JEANETTE E MCPHERSON<br><br>Chapter: 11<br><br>Hearing Date: March 27th, 2024<br>Hearing Time: 9:30 AM |

### Brief In Support of Debtor's Amended Chapter 11 Plan Number 6 [ECF #140]

### I.    INTRODUCTION

CHRISTONE DISTRIBUTION, INC., a Nevada Corporation, as Debtor in Possession (hereinafter referred to as "Debtor"), submits this brief in support of its Amended Chapter 11 Plan Number 6 [ECF #140] (hereinafter referred to as "Plan"). This Brief is made and based on the points and authorities herein, the Declaration in support of plan (which is being filed concurrently with this Brief), the papers and pleadings on file in this bankruptcy case, judicial notice of which are requested, and any arguments made at any hearing on confirmation of the Plan.

## TABLE OF CONTENTS

I. INTRODUCTION...................................................................................................1

II. STATEMENT OF FACTS...................................................................................3

III.    KEY CHANGES TO THE CURRENT VERSION OF THE PLAN...........................4

IV. LEGAL ARGUMENT...........................................................................................5

A. The Applicable Subchapter V Plan Confirmation Standards: 11 U.S.C. § 1191..................5

B. 11 U.S.C. § 1229(a)(1): Plan Compliance with the Bankruptcy Code..................................6

1. 11 U.S.C. § 1122: Classification of Claims.........................................................................7

2. 11 U.S.C. § 1123(a): Mandatory Plan Requirements.........................................................7

3. 11 U.S.C. § 1133(b): Permissive Plan Provisions...........................................................10

4. The First Plan Was Timely Filed.....................................................................................11

C. 11 U.S.C. § 1129(a)(2): Proponent Compliance With the Bankruptcy Code Procedures....12

D. 11 U.S.C. § 1129(a)(3): Good Faith.................................................................................13

E. 11 U.S.C. § 1129(a)(4): Payments for Services Are Reasonable.......................................15

F. 11 U.S.C. § 1129(a)(5): Disclosure of Management and Insiders......................................15

G. 11 U.S.C. § 1129(a)(6): Regulatory Approvals.................................................................16

H. 11 U.S.C. § 1129(a)(7): Best Interests Test.....................................................................16

I. 11 U.S.C. § 1229(a)(8): Class Acceptance.......................................................................17

J. 11 U.S.C. § 1129(a)(9): Administrative and Priority Claims..............................................17

K. 11 U.S.C. § 1129(a)(10): One Consenting Impaired Class................................................18

L. 11 U.S.C. § 1129(a)(11): Feasibility................................................................................18

M. 11 U.S.C. § 1129(a)(12): U.S. Trustee's Fees Paid.........................................................21

N. 11 U.S.C. § 1129(a)(13): No Retiree Benefits.................................................................22

O. 11 U.S.C. § 1129(a)(14): Domestic Support Obligations..................................................22

P. 11 U.S.C. § 1129(a)(15): Plan Contributions of an Individual Debtor...............................23

Q. 11 U.S.C. § 1129(a)(16): Non-Profit Transfers...............................................................23

R. The Plan Complies with Various Other Miscellaneous Requirements.................................23

S. 11 U.S.C. § 1191(b): The Plan Does Not "Discriminate Unfairly".....................................24

T. 11 U.S.C. 1191(b)-(d): The Plan is "Fair and Equitable"..................................................25

U. Modifications to the Plan are Permitted...........................................................................27

V. CONCLUSION................................................................................................29

## II.    STATEMENT OF FACTS

1. On January 7, 2023, Christone Distribution, Inc. (the "Debtor") commenced the Chapter 11 bankruptcy case under Subchapter V by filing a voluntary petition [ECF 1].

2. On January 10, 2023, the Court appointed Jeanette McPherson as the Subchapter V Trustee for the case [ECF 5].

3. On March 2, 2023, the Court issued an order granting the application for the employment of Seth Ballstaedt as Attorney for the Debtor-In-Possession [ECF 27].

4. On March 20th, 2023, the Debtor filed a Motion for Turnover of Funds being held by Amazon Capital Services ("ACS") [ECF 28]. The prepetition freeze of these funds, and of the Debtor's Amazon store merchant account was a precipitating event which had led to the filing of the instant bankruptcy case as it had essentially cut off all revenue for which the Debtor could utilize in its business operations [see Declaration of Jing Liu].

5. On April 6th, 2023, the Debtor and ACS resolved the motion for turnover through stipulation which, *inter alia,* called for monthly payments to ACS in the amount of $20,000 per month [ECF 38]. This agreement was later modified on January 2nd, 2024 by stipulation to accommodate the seasonality of the Debtor's cash flow [ECF 132] but still resulting in a final payoff of the Debt to ACS by the end of 2024.

6. On January 16th, 2024 the Debtor filed the proposed amended plan #6 [ECF 140] which is the subject of this brief and for which the Debtor now proposes should be confirmed, and which is an amended from earlier versions of the plan to address objection by the United States Trustee [ECF 110] and a limited objection by the Subchapter V Trustee [ECF 112] to earlier iterations of the proposed plan.

### III.    <u>KEY CHANGES TO THE CURRENT VERSION OF THE PLAN</u>

7.  A revision of the payment schedule to enhance feasibility, smoothing out of the monthly payment amount (in contrast to earlier versions of the plan which were significantly front-loaded with the bulk of all payments occurring in a short period of time immediately after confirmation). In addition, the payment schedule is adjusted to accommodate the seasonality of the Debtor's revenues (the Debtor sells spring and summer products).

8.  In support of the above described "smoothing out," the Debtor has negotiated a modification of the agreement with Amazon Capital Services (ACS) to accommodate the Debtor's business seasonality and fluctuating sales trends that impact the Debtor's revenue and operational stability [ECF 132].

9.  The new proposed plan identifies a specific means of funding for the initial payment of professional fees to the Subchapter V Trustee, which will be funded through monies recovered from Bank of America by stipulation [ECF 157] related to unauthorized draws in violation of the automatic stay provision under §362. While the stipulation says "at least $17,200" the actual amount based on communication with Bank of America is expected to be $18,900 [see Declaration of Jing Liu], which shall be tendered to the Debtor's attorney to be held in trust and earmarked for the Subchapter V trustee's fee.

10. In addition, the Debtor has revised its Monthly Operating Reports (MORs), correcting earlier filings that were missing required exhibits and other pertinent information. Notably, around October 17th, 2023, several amended reports were submitted for the filing periods ending in January 2023 (ECF No. 84), February 2023 (ECF No. 85), March 2023 (ECF No. 86), April 2023 (ECF No. 87), June 2023 (ECF No. 88), July 2023 (ECF

No. 89), and August 2023 (ECF No. 90), providing a better basis for parties in interest to evaluate the plan's feasibility. As of the date of the filing of this brief, the Debtor has filed all of its monthly operating reports up to and including for the month of February 2024.

11. As an additional cost-saving measure, the Debtor moved its inventory into a friend's warehouse for free storage, following the expiration of its previous warehouse lease at the end of February [see Declaration of Jing Liu]. This temporary solution helps the Debtor avoid storage costs until the largest payments due under the plan are completed later this year. For context, the plan's payment schedule for months 4 to 9, the Debtor is committed to paying creditors $35,486 each month, however, after month 14, this amount reduces to $8,145 per month [ECF 140], so the amounts due under the plan will be reducing significantly after that point.

### IV.    LEGAL ARGUMENT

#### A.    The Applicable Subchapter V Plan Confirmation Standards: 11 U.S.C. § 1191.

Under normal, non-subchapter V, Chapter 11 practice, a debtor has the burden of demonstrating that a proposed chapter 11 plan of reorganization satisfies § 1129 of the Bankruptcy Code by a preponderance of the evidence. See Liberty Nat'l Enters. V. Ambanc LaMesa Ltd. P'ship (IN re Ambanc LaMesa Ltd. P'ship), 115 F.3d 650, 653 (9th Cir. 1997). This same "preponderance of the evidence" burden of proof presumably applies pursuant to § 1191 of the Bankruptcy Code, which provides the requirements to confirm a chapter 11 plan of reorganization under Subchapter V as well. See, e.g. Grogan v. Garner, 498 U.S. 279, 286 (1991) (noting that the language of the Bankruptcy Code does not prescribe the standard of proof, and thus that "[b]ecause the preponderance-of-the-evidence standard results in a

roughly equal allocation of the risk of errors between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interest or rights are at stake.").

Section § 1191(a) and (b) of the Bankruptcy Code provide as follows:

(a) **Terms**. The court shall confirm a plan under this subchapter only if all of the requirements of § 1129(a), other than paragraph (15) of that section, of this title are met.

(b) **Exception**. Notwithstanding § 510(a) of this title, if all of the applicable requirements of § 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1191 (a) and (B). See also In re Steven Stars on the Hudson Corp., 2020 WL 4558344, at *3-4 (Bankr. S.D. Fla. Aug. 7, 2020) (detailing many of the benefits of new Subchapter V of the Bankruptcy Code).

Here, the Debtor seeks non consensual confirmation pursuant to the §1191(b) exception. Pursuant to § 1191(b), the Court "shall" confirm the Plan if all requirements of § 1129(a) are met, *other than* paragraphs (8), (10), and (15) of that subsection, and the Plan does not otherwise "discriminate unfairly" and is "fair and equitable" pursuant to §§ 1191(b)-(d). As will be shown herein, the Debtor's Plan satisfies all of the foregoing requirements and thus the Court should confirm the Plan on a non consensual basis.

**B.    11 U.S.C. § 1229(a)(1): Plan Compliance with the Bankruptcy Code**

Section § 1129(a)(1) of the Bankruptcy Code requires that a plan must "[c]omply with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). "(T)he legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase

Aapplicable provisions" in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans…" In re Johns-Mansville Corp., 843 F.2d at 648-649. To determine plan compliance with § 1129(a)(1) of the Bankruptcy Code, reference must be made to the requirements of §§ 1122 and 1123, which govern classification of claims and contents of plans, respectively. See In re G-I Holdings, Inc., 420 B.R. 216 (D.N.J. 2009); In re Journal Register Co., 407 B.R. 520, 531-32 (Bankr. S.D.N.Y. 2009); H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978). An analysis of both of these subsections follows:

     **1.**     **11 U.S.C. § 1122: Classification of Claims**

Section 1122(a) states, "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). As applied to the case at hand, the Debtor's Plan classifies its creditors into the following five (5) classes:

    1. Class 1 -The secured claim of Amazon Capital Services, Inc.

    2. Class 2 -The Secured claim of Byzfunder NY LLC

    3. Class 3 - The Secured claim of Marcus by Goldman Sachs

    4. Class 4 - The secured claim of Mulligan Funding

    5. Class 5 -All non-priority unsecured claims allowed under §502

The Class 5 creditors are made of the unsecured creditors which are all substantially similar as they are all non-priority, unsecured creditors. Accordingly, the Plan complies with § 1122 of the Bankruptcy Code.

     **2.**     **11 U.S.C. § 1123(a): Mandatory Plan Requirements.**

Section § 1123(a) of the Bankruptcy Code sets forth eight (8) requirements with which the proponent of every chapter 11 plan must comply. As demonstrated herein, the Plan fully complies with each of these enumerated requirements.

Section § 1123(a)(1) requires that a plan designate classes of claims and equity interests subject to § 1122 of the Bankruptcy Code. In addition to Administrative Claims and Priority Tax Claims in Article 3, which need not be designated, Articles 2 and 4 of the Plan designate five classes of claims. Accordingly, the Plan satisfies § 1123(a)(1) of the Bankruptcy Code.

Section § 1123(a)(2) requires a plan to specify any class of claims that is not impaired under a plan. In accordance therewith, Article 4 of the plan specifies that there are no classes that remain unimpaired.   Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

Section § 1123(a)(3) requires a plan to specify the treatment of all impaired classes of claims.   Article 4 of the Plan sets forth class 1 through 5 as  impaired classes in the plan, with the anticipated payments for each class outlined and payments being disbursed directly by the debtor.  The class 5 Non-priority unsecured creditors will not receive a disbursement. Accordingly, the Plan satisfies § 1123(a)(3) of the Bankruptcy Code.

Section § 1123(a)(4) requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to less favorable treatment than other class members. The class 1 through 4 claims will be paid with similar treatment or per the terms of their stipulation agreements.  The Class 5 - Non-priority Unsecured creditors shall not receive any disbursement.

Section § 1123(a)(5) requires that a plan provide "adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Article 7 of the Plan provides adequate means for

implementation as required by § 1123(a)(5) of the Bankruptcy Code. In the case at hand, the Debtor will implement the plan on the effective date of the plan. Debtor shall disburse payments directly for all administrative and secured payments as outlined in the plan. Payments shall be funded from revenue generated by the Debtor's business operations. Second, as supported by the Debtor's Plan Projections [ECF #39, Exhibit 2], the Debtor is providing for the submission of its future income as is necessary for the execution of its Plan as required by § 1190(2) of the Bankruptcy Code. For the avoidance of doubt, distributions in excess of the Plan Projections are not provided for in the Plan. Third, the Plan provides that the Debtor shall remain in charge of distribution under the Plan post-confirmation. Id. Art. 10, ¶ 8. Accordingly, the Plan, together with the documents and agreements set forth in the Plan, provide the means for implementation of the Plan as required by § 1123(a)(5) of the Bankruptcy Code.

Section § 1123(a)(6) prohibits the issuance of nonvoting equity securities, and requires amendment of a debtor's corporate charter to provide so. This section also requires that a corporate charter provide an appropriate distribution of voting power among the classes of securities possessing voting power. Section § 1123(a)(6) is inapplicable/satisfied because the Plan does not provide for the issuance of any nonvoting equity securities.

Section § 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7). The Plan complies with § 1123(a)(7) because Jing Liu, who is the President and who has the most experience with the Debtor and its operations, will remain in that capacity, and the Plan does not appoint any other

officers, directors or trustees. See Plan Article 7.

Section § 1123(a)(8) of the Bankruptcy Code is inapplicable pursuant to § 1181(a) of the Bankruptcy Code, and because the Debtor is a corporation, not an individual.

### 3.    11 U.S.C. § 1133(b): Permissive Plan Provisions

Section § 1123(b) of the Bankruptcy Code sets forth the permissive provisions that may be incorporated into a chapter 11 plan. As demonstrated below, the Debtor's incorporation of such permissive provisions in the Plan is consistent with § 1123(b).

Section § 1123(b)(1) of the Bankruptcy Code provides that a plan "may impair or leave unimpaired any class of claims, secured or unsecured, or of interests." As contemplated by § 1123(b)(1), Article 4 section 4.01 of the Plan described the treatment for the Classes 1 through 5 as impaired classes.

Section § 1123(b)(3)(A) of the Bankruptcy Code allows a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). The Debtor did disclose in its schedules a claim against a supplier in China [ECF #15] but no settlement or adjustment of this claim has been incorporated into the proposed plan although the Debtor has reserved the right to pursue this claim to the extent the claim is viable and economical.  Therefore § 1123(b)(3)(A) is inapplicable/satisfied.

The Plan does not provide for the sale, transfer or assignment of all or substantially all of the Debtor's property and, therefore, § 1123(b)(4) of the Bankruptcy Code is not applicable.

Section § 1123(b)(3)(B) of the Bankruptcy Code provides that a plan "may provide for the retention and enforcement by the debtor" of certain claims or interests. The Plan does not

specifically address, and Debtor does not claim to possess any claims, other than claim objections.

Section § 1123(b)(5) of the Bankruptcy Code provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5). Classes 1 through 4 are secured claims which are not secured by a security interest in real property that is the debtor's principal residence. The class 5 non-priority unsecured creditors claims are modified as they shall not receive a disbursement. Therefore, the Plan complies with § 1123(b)(5) of the Bankruptcy Code.

Section § 1123(b)(6) of the Bankruptcy Code is a "catchall" provision, which permits inclusion in a plan of any appropriate provision as long as such provision is not inconsistent with applicable sections of the Bankruptcy Code. The remaining provisions of the Debtor's Plan are fully compliant with the Bankruptcy Code.

In sum, the Plan properly invokes various permissive plan provisions consistent with § 1123(b) of the Bankruptcy Code as well.

Section § 1123(c) of the Bankruptcy Code does not apply to this Subchapter V Case pursuant to § 1181(a) and the Debtor is a corporation, not an individual, in any event.

**4.     The First Plan Was Timely Filed**

The Debtor's Plan was timely filed 90 days after the Petition Date and thus the Debtor's Plan is timely filed pursuant to § 1189(b) of the Bankruptcy Code and no extension of time under that subsection is required.

**C.     11 U.S.C. § 1129(a)(2): Proponent Compliance With the Bankruptcy Code**

**Procedures**

Section § 1129(a)(2) of the Bankruptcy Code requires a plan proponent to "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). In pre-SBRA chapter 11 practice, § 1129(a)(2) was intended to encompass the disclosure and solicitation requirements under § 1125. See In re Trans World Airlines Inc., 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995); H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978). § 1125(b) of the Bankruptcy Code requires the transmission to creditors of a written disclosure statement containing "adequate information." 11 U.S.C. § 1125(b).

Section § 1181 (b) of the Bankruptcy Code applicable in Subchapter V cases, however, provides that § 1125 does not apply to Subchapter V cases "[u]nless the court for cause orders otherwise." 11 U.S.C. § 1881 (b). The Court has not "ordered otherwise" in the case at hand, and thus no disclosure statement containing "adequate information" pursuant to § 1125 of the Bankruptcy Code is required in the Subchapter V case.

Notwithstanding the foregoing § 1190 of the Bankruptcy Code does provide, in pertinent part, that a Subchapter V plan:

(1) Shall include ---
  (A) A brief history of the business operations of the debtor;
  (B) A liquidation analysis; and
  (C) Projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization;
(2) Shall provide for the submission of all or such portion of the future earnings or other future income of the debtor to supervision and control of the trustee as is necessary for the execution of the plan;...

In the case at hand, the Plan does include a brief history of the Debtor's business operations, see Plan p. 1 section A, as well as projected cash flow projections, see id. At Ex. 1, and thus complies with § 1190(1)(A) of the Bankruptcy Code. Likewise, the Plan includes a

liquidation analysis, see Id. Ex. 2, and thus complies with §§ 1190(1)(B) and (C) of the Bankruptcy Code as well.

**D.    11 U.S.C. § 1129(a)(3): Good Faith**

Section § 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129 (a)(3). Section § 1129(a)(3) does not define "good faith." Platinum Cap., Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 341 F.3d 1070, 1074 (9th Cir. 2002). The good faith determination pursuant to § 1129(a)(3) of the Bankruptcy Code is based on the "totality of the circumstances." Id. (citations omitted). "[B]ankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each . . . plan." Id. at 1075. "A plan proposed in good faith where it achieves a result consistent with objectives and purposes of the Code." Id. (citations omitted); In re Sagewood Manor Assocs. LPP, 223 B.R. 756, 761-62 (Bankr. D. Nev. 1998). The objectives and purposes of the Bankruptcy Code, and chapter 11 in particular, have been described as including, among other matters, "to maximize the value of the bankruptcy estate," Toibb v. Radloff, 501 U.S. 157, 163 (1991), and " to satisfy creditors' claims," United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983). See Sagewood Manor, 223 B.R. at 762.

Moreover, that a creditor's contractual rights are adversely affected doesn't by itself warrant a bad faith finding. "In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights." Sylmar Plaza, L.P., 314 F.3d at 1074-75 (citing In re PPI Enters., Inc., 228 B.R. 339, 344-45 (Bankr. D. De. 1998), aff'd, 324 F.3d 197 (3d Cir. 2003)). "[T]he fact that a debtor proposes a

plan in which it avails itself of an applicable Code provision does not constitute evidence of bad faith." PPI Enters., 228 B.R. at 347 (stating that it is not bad faith to take advantage of a particular provision of the Code for the purpose of capping the amount of a creditor's claim). While the protection of creditors' interests is an important purpose under chapter 11, the Supreme Court has made it clear that successful debtor reorganization and maximization of the value of the estate are the primary purposes of chapter 11 relief. Sylmar Plaza, L.P., 314 F.3d at 1074-75 (citing Bonner Mall P'ship v. US Bancorp Mortg. Co. (In re Bonner Mall P'ship), 2 F.3d 899, 916 (9th Cir. 1993)).

The good faith requirement does not depend on a debtor's subjective intent, but rather "encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings." Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828-29 (9th Cir. 1994). Generally, a plan is not filed in good faith if it represents an attempt "to unreasonably deter and harass creditors" and to "achieve objectives outside the legitimate scope of the bankruptcy laws." Id.

The foregoing objectives are fully evident with the Plan in the case at hand. The Plan allows for a restructuring of the Debtor's viable business, which continued operations after the filing of the instant case. Moreover, there are no allegations in the case at hand evidencing the typical situations where courts have found a lack of good faith. See In re Trans Max Techs., 349 B.R. 80, 88-89 (Bankr. D. Nev. 2006).

The second prong of § 1129(a)(3) of the Bankruptcy Code requires that the Plan "not be proposed by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The term "law" as used in this section, includes state law, and applies not to the substantive provision of a plan itself but rather to the means employed in proposing a plan. See In re Food City, Inc., 110 B.R. 808, 810 (Bankr. W.D. Tex. 1990). The Plan does not, nor are there any allegations that the Plan

somehow runs afoul of applicable state law. Accordingly, the Plan satisfies § 1129(a)(3) of the Bankruptcy Code.

Finally, pursuant to Bankruptcy Rule 3020(b)(2), because no objection is timely filed on this basis, the Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

**E.    11 U.S.C. § 1129(a)(4): Payments for Services Are Reasonable**

Section § 1129(a)(4) requires that all payments of professional fees made from estate assets be subject to review and approval by the court. Section § 1129(a)(4) of the Bankruptcy Code has been construed to require that all payments of professional fees made from estate assets be subject to review and approval by the Bankruptcy Court as to their reasonableness. In re Idearc Inc., 423 B.R. 138, 163-64 (Bankr. N.D. Tex. 2009); In re Art & Architecture Books of the 21st Century, No. 2:13-bk-14135-RK, 2016 WL 1118743, at *15 (Bankr. C.D. Cal. Mar. 18, 2016); In re Elsinore Shore Assocs., 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that the requirements of § 1129(a)(4) of the Bankruptcy Code were satisfied where the plan provided for payment of only "allowed" administrative expenses). Consistent with the foregoing, the Plan provides that all such fees and expenses, as well as all other accrued fees and expense of estate professionals through the Effective Date, remain subject to final review by the Court for reasonableness pursuant to § 330 of the Bankruptcy Code. See Plan § 3.02. Accordlly, the Plan satisfies § 1129(a)(4) of the Bankruptcy Code.

**F.    11 U.S.C. § 1129(a)(5): Disclosure of Management and Insiders**

Section § 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor; that the appointment or continuance of such officers and directors be consistent with the

interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtor. Section § 1129(a)(5) is satisfied in the case at hand because the Plan discloses that Jing Liu, the Debtor's president, will continue in that role with the Reorganized Debtor. See Plan, § 8.07.

**G.    11 U.S.C. § 1129(a)(6): Regulatory Approvals**

Section § 1129(a)(6) of the Bankruptcy Code is inapplicable to the case at hand because the Debtor does not charge rates that are regulated by a governmental agency.

**H.    11 U.S.C. § 1129(a)(7): Best Interests Test**

Section § 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and interest holders, and specifically, that each holder of an impaired claim has either accepted the plan, or "will receive or retain under the play on account of such claim or interest property of value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7)(A)(i) and (ii).

The best interests test focuses on individual dissenting creditors rather than classes of claims. See Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle P'ship, 526 U.S. 434, 441 n.13 (1999). In order to satisfy the "best interest test, " the court must find that each dissenting creditor will receive or retain value, as of the effective date of the plan, that is not less than the amount it would receive if the debtor was liquidated. See Art & Architecture, 2016 WL 1118743 at *17 (citing 203 N. La Salle St. P'Ship, 526 U.S. at 442, and United States v.

*Reorganized CF & I Fabricators, Inc.*, 518 U.S. 213, 228 (1996)). In doing so, the court must take into consideration the applicable rules of distribution of the estate under chapter 7, as well as the probable costs incident to such liquidation." *In re Adelphia Comme'ns Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y 2007). This element only applies to non accepting holders of impaired claims. *See* *M&I Thunderbird Bank v. Birmingham (In re Consol. Water Utils., Inc.)*, 217 B.R. 588, 592 (B.A.P. 9th Cir. 1998) (citing *Bell Rd. Inv. Co. v. M. Long Arabians (In re M. Long Arabians)*, 103 B.R. 211, 216 (B.A.P. 9th Cir. 1989)).

As applied in the case at hand, two members of the non-priority unsecured creditor class 5 did vote to reject the Plan, but no impaired creditor filed an objection to confirmation asserting that the Plan failed to meet the "best interest of creditors" test in § 1129(a)(7) of the Bankruptcy Code. Moreover, as the Debtor's Liquidation Analysis demonstrates, all impaired creditors are not worse off under the Plan as compared with a chapter 7 liquidation. In fact, under the liquidation analysis, there would be zero, distributions to creditors which is consistent with the class 5 general unsecured treatment in the plan. *See Zante, Inc.*, 467 B.R. at 219 ("Because nothing is not less than nothing, the Plan satisfied § 1129(a)(7) without amendment."). Accordingly, the Plan satisfies § 1129(a)(7) of the Bankruptcy Code.

**I.    11 U.S.C. § 1229(a)(8): Class Acceptance**

Class acceptance under this section is not required in order to confirm pursuant to the exception provided by §1191(b) and it is pursuant to this exception that Debtor seeks to confirm this plan. Accordingly, this section does not apply.

**J.    11 U.S.C. § 1129(a)(9): Administrative and Priority Claims**

In accordance with § 1129(a)(9)(A) of the Bankruptcy Code, as modified by § 1191(e)

given that this is a Subchapter V case, the Plan provides for the payment in full of each older of an allowed administrative claim on the effective date of the plan or by other terms as agreed upon by the holder of the claim and the Debtor. <u>See</u> Plan § 3.02. The Plan further expressly confirms the entitlement to compensation of the Subchapter V Trustee for reasonable fees and expenses pursuant to § 330(a)(1) of the Bankruptcy Code on the effective date of the plan or by other terms as agreed upon by the trustee and the Debtor.. <u>See</u> Plan, Art 10 ¶ 9.

**K.    <u>11 U.S.C. § 1129(a)(10): One Consenting Impaired Class</u>**

A consenting impaired class acceptance under this section is not required in order to confirm pursuant to the exception provided by §1191(b) and it is pursuant to this exception that Debtor seeks to confirm this plan. Accordingly, this section does not apply.

**L.    <u>11 U.S.C. § 1129(a)(11): Feasibility</u>**

Section § 1129(a)(11) of the Bankruptcy Code requires that a proposed plan be feasible. Specifically, the Debtor must establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The feasibility test under § 1129(a)(11) requires the court to determine whether the plan is workable and has a reasonable likelihood of success <u>United States v. Energy Res. Co.,</u> 495 U.S. 545, 549 (1990).

The focus of the court's inquiry in determining whether the feasibility standard of § 1129(a)(1) of the Bankruptcy Code has been met is whether the plan offers a reasonable

assurance of success. Post-confirmation success need not be guaranteed. The court is not required to determine that the future success of the post-confirmation debtor is inevitable in order to find the plan is feasible. See Johns-Mansville, 853 F.2d at 649; In re The Prudentail Energy Co., 58 B.R. 857, 862 (Bankr., S.D.N.Y. 1986); see also Pizza of Haw., Inc. v. Shaky's Inc. In re Pizza of Haw.), 761 F.2d 1374, 1382 (9th Cir. 1985) ("The purpose of § 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.") "While a reviewing court must examine 'the totality of the circumstances' in order to determine whether the plan fulfills the requirements of § 1129(a)(11)... only a relatively low threshold of proof is necessary to satisfy the feasibility requirement." Sagewood Manor, 223 B.R. at 762-63.

In the case at hand, as provided in Article 7, the Debtor's Plan calls for Plan payments to be funded through cash flow generated from operations as set forth in the Plan Projections, see Plan, Ex. 3.  The foregoing results in sufficient income and cash flow in order to pay all allowed claims under the Plan.

The feasibility of the Debtor's plan has been the primary concern expressed to earlier iterations of the Debtor's plan by the United States Trustee [ECF 110] and the Subchapter V Trustee [ECF 112]. To address these concerns, the Debtor has made several changes to its plan:

1. The payment schedule has been adjusted to spread out the monthly payments, to the extent possible, more evenly and in a way that accounts for seasonality of the Debtor's revenue. This change accounts for the Debtor's sales patterns, which are seasonal, peaking in the spring and summer.

2. Additionally, the Debtor renegotiated its agreement with Amazon Capital Services (ACS) [ECF 132] to reflect the seasonal nature of its business, helping to stabilize revenue over the year.

3. The plan now includes a detailed method for funding the initial payment of professional fees to the Subchapter V Trustee, with funds expected to come from a stipulation with Bank of America [ECF 157]. This deal is projected to bring in $18,900, more than the stipulated "at least $17,200", to cover the Trustee's fees, as explained in the Declaration of Jing Liu.

4. The Debtor also updated its Monthly Operating Reports (MORs), fixing previous omissions and adding necessary details. Amendments were made for reports covering January 2023 to August 2023 [ECF Nos. 84, 85, 86, 87, 88, 89, and 90], ensuring all stakeholders have the latest financial information up to February 2024.

5. To cut costs, the Debtor moved its inventory to a no-cost storage option provided by a friend after its lease ended in February, as noted in the Declaration of Jing Liu. This decision helps sustain the payment schedule which will still require heavy payment obligation but which will reduce significantly after the first 9 months of the plan [ECF 140].

These changes are designed to make the plan workable, allowing the Debtor to meet its obligations and maintain its operations.

The Debtor's monthly operating reports, looking at total revenue for each calendar month show the following revenue with a slight trend upwards (MOR's prior to May 2023 are omitted because they are anomalous on account of the fact that the Debtor was not able to utilize its Amazon merchant account during those months):



[Based on data sourced from Christone Distribution, Inc.'s Monthly Operating Reports filed with the United States Bankruptcy Court, District of Nevada.]

Similarly, the Debtor's net business income as displayed on the Amazon Seller's Dashboard shows a slight positive trend as well:



**M.     11 U.S.C. § 1129(a)(12): U.S. Trustee's Fees Paid**

Section § 1129(a)(12) of the Bankruptcy Code requires that as a condition to confirmation, "[a]ll fees payable under § 1930 of title 28, as determined by the court at the

hearing on confirmation of the plan, have been paid or the plan provides for the payment of

all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). Because the Debtor

has elected to proceed under Subchapter V, however, no statutory fees are owing to its

knowledge. See 28 U.S.C. § 1930(a)(6)(A) ("[I]n addition to the filing fee paid to the clerk, a

quarterly fee shall be paid ot the United States trustee, for deposit in the Treasury, in each case

under chapter 11 of title 11, other than under subchapter V, for each quarter (including any

fraction thereof) until the case is converted or dismissed, whichever comes first…")

(emphasis added). Accordingly, the Plan provides that such fees are satisfied to the extent they

are applicable. See Plan § 3.04 and 3.05.

**N.    11 U.S.C. § 1129(a)(13): No Retiree Benefits**

Section § 1129(a)(13) of the Bankruptcy Code requires that "The Plan provides for the

continuation after its effective date of payment of all retiree benefits, as that term is defined in

§ 1114 of this title, at the level established pursuant to subsection (e)91)(B) or (g) of § 1114 of

this title, at any time prior to confirmation of the plan, for the duration of the period the debtor

has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13). The Debtor has no

"retiree benefits" as that term is defined in § 1114 of the Bankruptcy Code, and thus §

1129(a)(13) is satisfied to the extent that it is applicable.

**O.    11 U.S.C. § 1129(a)(14): Domestic Support Obligations**

Section § 1129(a)(14) of the Bankruptcy Code requires as a condition of plan

confirmation "[i]f the debtor is required by a judicial or administrative order, or by statute, to

pay a domestic support obligation, the debtor has paid all amounts payable under such order

or such statute for such obligation that first become payable after the date of the filing of the

petition." 11 U.S.C. § 1129(a)(14). In the case at hand, the Debtor is not obligated to pay any "domestic support obligation" as defined in § 101(14)(A) of the Bankruptcy Code, and thus § 1129(a)(14) of the Bankruptcy Code is inapplicable/satisfied.

**P.      11 U.S.C. § 1129(a)(15): Plan Contributions of an Individual Debtor**

Section § 1129(a)(15) of the Bankruptcy Code does not apply in this Subchapter V case pursuant to §§ 1191(a) and (b). Additionally, the Debtor is a corporation, not an individual, and this section only applies to individuals. Accordingly, § 1129(a)(15) of the Bankruptcy Code is inapplicable/satisfied.

**Q.      11 U.S.C. § 1129(a)(16): Non-Profit Transfers**

The Debtor is not an eleemosynary entity; rather, it is a private, for profit corporation. Accordingly, § 1129(a)(16) of the Bankruptcy Code is inapplicable/satisfied.

**R.      The Plan Complies with Various Other Miscellaneous Requirements**

The Plan satisfies Bankruptcy Rule 3016 because: (1) the Plan is dated and identifies the Debtor as the party submitting the Plan, and thus complies with Bankruptcy Rule 3016(a); (2) the Plan does not seek to enjoin any conduct not otherwise enjoined under the Bankruptcy Code, and thus complies with Bankruptcy Rule 3016(c); the Debtor used the required Official Form 425A for its Plan in compliance with Bankruptcy Rule 3016(d) and the Court's Subchapter V Order.

§§ 1129(b), (c) and (e) of the Bankruptcy Code are inapplicable in this Subchapter V case pursuant to § 1181(a).

No party in interest that is a governmental unit has requested that the Plan not be confirmed on the grounds that the primary purpose of the Plan is avoidance of taxes or

avoidance of application of Section 6 of the Securities Act of 1933, and the primary purpose of the Plan is not avoidance of taxes or avoidance of Section 5 of the Securities Act of 1933. Accordingly, the Plan satisfies § 1129(d) of the Bankruptcy Code.

Finally, to the extent the Court determines that confirmation of the Debtor's Plan is only available on a nonconsensual basis pursuant to § 1191(b) of the Bankruptcy Code, the Plan complies with § 1192 of the Bankruptcy Code with respect to the availability of the Debtor's discharge by expressly incorporating that provision as available "[u]pon completion of its payment obligations under the Plan." Plan, Art 9 and 10 ¶ 13.

## S.    11 U.S.C. § 1191(b): The Plan Does Not "Discriminate Unfairly"

Section § 1191(b) of the Bankruptcy Code requires that a plan, among other matters, "not discriminate unfairly" with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b). Although § 1181(b) of the Bankruptcy Code provides that § 1129(b) of the Bankruptcy Code does not apply in Subchapter V cases, the fact that § 1129(b)(1) and 1181(b) both prohibit "unfair discrimination" presumably means that the same legal standards for that specific requirement in § 1129(b)(1) also apply by analogy to that same requirement in § 1191(b). See 11 U.S.C. § 1129(b)(1) (containing identical language requiring, among other matters, that "the plan does not discriminate unfairly, … with respect to each class of claims or interests that is impaired under, has not accepted, the plan.").

The unfair discrimination standard of § 1129(b)(1) ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other similarly situated classes. See In re

LightSquared Inc., 513 B.R. 56, 99 (Bankr. S.D.N.Y. 2014). Generally a plan unfairly discriminates in violation of § 1129(b)(1) only if similar classes are treated differently without a reasonable basis for that disparate treatment. See In re Buttonwood Partners, Ltd., 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990). Accordingly, as between five classes of claims, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interest, see, e.g. In re Johns-Mansville Corp., 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), aff'd 78 B.R. 407 (S.D.N.Y 1987), aff'd 843 F.2d 636 (2d Cir. 1988), or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, see, e.g., Buttonwood Partners, 111 B.R. at 63. In other words, a plan does not "discriminate unfairly" if a dissenting class is treated equally with respect to other classes of equal "rank," meaning of equal priority. Art & Architecture, 2016 WL 1118743, at *18.

As applied in the case at hand, the Debtor's Plan properly defines the class 1 through 4 secured claims, and separately classifies the class 5 non-priority unsecured claims and thus they are separate and apart from other claims. As a result, the Debtor's Plan does not discriminate unfairly against any impaired claims that have not accepted the Plan pursuant to § 1191(b) of the Bankruptcy Code because each class contains dissimilar claims that are required to be separately classified into their own classes.

## T.    11 U.S.C. 1191(b)-(d): The Plan is "Fair and Equitable"

Debtor asserts that it has also satisfied the "fair and equitable" requirement therein with respect to each class of claims or interest that is impaired under, and has not accepted, the plan. Section § 1191(c) of the Bankruptcy Code, in turn, provides that the condition that a plan be fair and equitable includes the following three (3) requirements:

(1)    With respect to a class of secured claims, the plan meets the requirements of §

1129(b)(2)(A) of this title.

(2)    As of the effective date of the plan --
       (A)  The plan provides that all of the projected disposable income of the debtor to be receive din the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

       (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

(3)    (A)(i) The debtor will be able to make all payments under the plan; or (ii) there is a  reasonable likelihood that the debtor will be able to make all payments under the plan; and

       (B) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interest in the event that the payments are not made.

11 U.S.C. § 1191(c).

_First_, the Plan complies with § 1191(c)(1) of the Bankruptcy Code because it complies with the definition of fair and equitable pursuant to § 1129(b)(2)(A) as there are not any secured claims in this case.

_Second_, the Plan complies with § 1191(c)(2) of the Bankruptcy Code because it provides that all of the Debtor's "disposable income" of $237.50 per month which is received in the next five (5) years is applied to make payments under the Plan for administrative claims and a disbursement to the class 1- Non-priority unsecured claims (or at least the value to be distributed under the Plan is not less then projected disposable income of the Debtor). The term "disposable income" used in § 1191(c)(2), in turn, is defined in § 1191(d) as follows:

[I]ncome that is received by the debtor that is not reasonable necessary to be expended--

(1) for--

    (A) the maintenance or support of the debtor or a dependant of the debtor; or

    (B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or (2) for the payment of expenditures necessary for the continuation, preservation or operation of the business of the debtor.

11 U.S.C. § 1191(d)

    As applied in the case at hand, as set forth in the Debtor's Plan Projections, see Plan, Ex. 3, the Debtor's Plan proposes to devote its projected disposable income after payment of necessary operations and maintenance of the Debtor's business, including a reasonable salary to the Debtor's owner for his substantial and ongoing time spent operating and managing the Debtor. Additionally, the Debtor, as a corporation and not an individual, does not owe any "domestic support obligations pursuant to § 1191(d)(2) of the Bankruptcy Code, and as that term is defined in § 101 (14A).

    *Third*, the Plan complies with § 1191(c)(3) of the Bankruptcy Code because, as previously similarly discussed in reference to the feasibility of the Debtor's Plan pursuant to § 1129(a)(11), the Debtor will be able to make all payments under the Plan or there is a reasonable likelihood that it will be able to make all payments as demonstrated by its projections attached to the Plan as an exhibit. Accordingly, Debtor's Plan is "fair and equitable" pursuant to § 1191(b) through (d) of the Bankruptcy Code, and thus can also be confirmed on a nonconsensual basis as well.

**U.**    **Modifications to the Plan are Permitted**

    The normal plan modification provisions in § 1127 of the Bankruptcy Code does not apply in Subchapter V cases. See 11 U.S.C. § 1181(a). Instead, § 1193(a) of the Bankruptcy

Code provides as follows in Subchapter V cases:

> The debtor may modify a plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of §§ 1122 and 1123 of this title, with the exception of subsection (a)(8) of such § 1128. After the modification is filed with the court, the plan as modified becomes the plan.

11 U.S.C. §1193(a)

Pursuant to Bankruptcy Rule 3019(a), if the Court finds that "the proposed modification does not adversely change the treatment of the claim of any creditor… who has not accepted in writing the modification," then it shall be deemed accepted.

Unlike modifications under § 1127 of the Bankruptcy Code in a normal Chapter 11 practice, however, there are typically no disclosure statements in Subchapter V cases and also the requirement in § 1127(c) that "[t]he proponent of a modification shall comply with § 1125 of this title with respect to the plan as modified" does not apply in Subchapter V cases.

As a result, under § 1193(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a) give a Subchapter V debtor tremendous flexibility to propose plan modifications, and without any need to revise any prior filings or provide any additional disclosure, except to the extent a particular creditor's claim treatment is actually adversely impacted. Accordingly, the Debtor reserves the right to make any necessary modifications to its Plan as may be necessary and appropriate, and provided they do not materially adversary change the treatment of any creditor's claim, absent that creditor's consent. Preserving the Debtor's ability to make such modifications is important in the case at hand given the relative novelty of Subchapter V of the Bankruptcy Code, and the relative lack of substantial case law interpreting the confirmation requirements under that new law to date, and thus the Debtor reserves the right

to incorporate any necessary amendments to the Plan in the form of confirmation order approving the Plan.

## V.    **CONCLUSION**

WHEREFORE, the Debtor submits that its Plan is confirmable on a consensual basis pursuant to 1191(a) of the Bankruptcy Code, and further request that the Court enter a Confirmation Order in the form as attached hereto. In the alternative, the Debtor requests that its Plan is confirmable nonconsensually via "cramdown" pursuant to § 1191(b) of the Bankruptcy Code. The Debtor also requests such other and further relief as is just and proper.

Dated: 3/24/2024

By: /s/ Seth Ballstaedt, Esq.
Seth Ballstaedt, Esq.
*Attorney for Debtor*